UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JACOB RIEGELSBERGER<br>individually and on behalf of all similarly<br>situated persons,<br><br>        Plaintiff,<br><br>        v.<br><br>AIR EVAC EMS, INC. and GLOBAL<br>MEDICAL RESPONSE, INC. (formerly<br>known as AIR MEDICAL GROUP<br>HOLDINGS, INC.),<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    No. 4:18-cv-00747-AGF<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>MEMORANDUM AND ORDER</u>**

This putative collective action is before the Court on Defendants' motion (ECF No. 19) for summary judgment.   Plaintiff claims that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., by failing to pay him and similarly situated employees overtime for all hours worked in excess of 40 hours in a single workweek.   Instead, Defendants paid Plaintiff overtime only for hours worked in excess of 84 hours in a two-week period.

The parties' primary dispute is whether Defendant Air Evac EMS, Inc. ("Air Evac") is a "carrier by air subject to the provisions of title II of the Railway Labor Act" (the "RLA"), and, thus, exempt from the overtime provisions of the FLSA. *See* 29 U.S.C. § 213(b)(3).   Plaintiff also argues that Air Evac should be estopped from asserting an FLSA exemption based on its representations regarding its overtime policies in an employment

offer letter to Plaintiff.  For the reasons set forth below, the Court will grant Defendants' motion.

## BACKGROUND

For the purpose of the motion before the Court, the record establishes the following. Defendant Global Medical Response, Inc. ("GMR") is the parent of Air Medical Group Holding LLC ("AMGH").  GMR and AMGH are both holding companies, and neither has any employees.  AMGH, in turn, is the parent company of several air ambulance companies, including but not limited to Air Evac.[1]

Air Evac provides air medical transport services via helicopter to critically ill or injured patients in medically underserved rural areas.  Air Evac collaborates with hospitals, physicians, 911 centers, and emergency medical services ("EMS") agencies to provide rural patients increased access to emergency trauma care.  Air Evac operates more than 130 air medical bases across 15 states, and transports patients both within states and across state lines.

Air Evac's sole business is providing air services in the form of an air ambulance, and it derives 100% of its revenue from providing such air ambulance services.  Air Evac

---

[1] Plaintiff sues both Air Evac and GMR, arguing that the two constitute a single and/or joint employers under the FLSA.  Defendants dispute that they are a single and/or joint employer under the FLSA, but Defendants argue that the issue is irrelevant to resolution of this motion because a parent company of an air carrier subject to the RLA is not liable for overtime under the FLSA as a consequence of its alleged joint employer status with the direct carrier employer.  Plaintiff does not dispute this assertion, and the Court agrees that if Plaintiff's work for Air Evac is exempt from the FLSA, GMR cannot be held liable either.  *See Dennis v. Watco Companies, Inc.*, 631 F.3d 1303, 1305-1306 (10th Cir. 2011).

2

provides air ambulance services without regard to a patient's insured status.   Air Evac markets its air ambulance services to hospitals, physicians, 911 centers, and EMS agencies.

Air Evac charges a fee to the patients it transports by air for the air ambulance services it provides.   In some instances, patients have insurance coverage that covers in whole or in part the air ambulance services provided by Air Evac, and in some instances, patients are required to pay directly for such air ambulance services.   In addition, Air Evac markets and sells to the public an "air ambulance membership," which is a form of prepaid protection against costs not covered by a member's insurance, other benefits, or third party responsibility.

Air Evac operates under Part 135 of the Federal Aviation Regulations ("FAR"), 14 C.F.R. Part 135, pursuant to a license issued by the Federal Aviation Administration ("FAA").   Air Evac's Part 135 Certificate has been in effect continuously since February 13, 1986.   In addition, Air Evac has a license to operate under 14 C.F.R. Part 298, as an air taxi operator.   Pursuant to its Part 135 Certificate, Air Evac is authorized to operate as an air carrier and conduct common carriage operations in accordance with the FAA.

Plaintiff Jacob Riegelsberger began working for Air Evac as a flight paramedic on or about December 3, 2017.   He is still employed by Air Evac as a flight paramedic. Plaintiff was previously employed as a paramedic by one of Air Evac's sister subsidiaries, REACH Air Medical Services ("REACH").   REACH classified Plaintiff as non-exempt, paid him an hourly rate, and paid him overtime for each hour worked in excess of 40 hours in a single workweek.   In late 2017, Air Evac offered Plaintiff his current position.

Plaintiff attached to his statement of additional facts submitted in connection with his opposition to this motion, a letter from Air Evac dated October 19, 2017.  The letter explains that REACH was transitioning Plaintiff's base to Air Evac, and thus, REACH employees like Plaintiff were being given the option to transfer to Air Evac.  The letter further states:

> While REACH and Air Evac have similar employment practices in many areas, there are a few differences we want to point out:
> - Base Salary – Base salaries will remain as they currently are within REACH
> - Annual Increase – Employees are eligible for an annual increase based on performance
> - PTO – We have attached a PTO comparison table that shows what your new accrual rate will be
> - Holiday's – AEL has the same Holiday's
> - **Overtime – After crew members have worked 84 hours in a pay period, they will receive overtime at 1 ½ times their base hourly rate for all other time worked.**

ECF No. 35-3 at 3 (emphasis added).

Air Evac also presented the terms and conditions of its job offer to Plaintiff in a two-page letter dated November 8, 2017, which stated, under the heading "Compensation," that:

> This position is considered a non-exempt position for purposes of Federal Wage and Hour Law, which means that you will be eligible for overtime pay for hours actually worked in excess of 84 hours in a pay period.

ECF No. 35-3 at 1.  Air Evac paid Plaintiff biweekly at an hourly rate, and paid him overtime when he worked more than 84 hours in a two-week period.

4

The flight crew for an Air Evac air ambulance consists of a pilot, one flight paramedic, and one flight nurse. The duties of an Air Evac flight paramedic include providing advanced life support care to critically injured or ill patients from initial contact and during air ambulance transport until care is relinquished at the hospital; assisting in pre-mission liftoff checklists and pilot assistance when needed, such as radio, navigational, and visual observation activities; conducting aircraft safety briefings as needed; complying with safety standards to assure safety of self, crewmembers, medical personnel, patient, bystanders, and equipment prior to liftoff; and completing and submitting flight records. An Air Evac flight paramedic functions as a medical flight crew member.

## ARGUMENTS OF THE PARTIES

Defendants argue that Air Evac is exempt from the overtime provisions of the FLSA because Air Evac is a "carrier by air subject to the provisions of Title II of the [RLA]." *See* 29 U.S.C. § 213(b)(3). Defendants assert that a two-part test governs whether this exemption applies: (1) whether the employer is a common carrier by air, and (2) whether the employee's job duties bear more than a tenuous, negligible and remote relationship to the employer's transportation activities. Regarding the latter, Defendants maintain that Plaintiff cannot dispute that his duties as a flight paramedic bear more than a tenuous, negligible and remote relationship to Air Evac's transportation activities. With respect to the first element, Defendants argue that the Court should rule in line with every court and federal agency to have considered the issue, that air ambulance companies like Air Evac are common carriers by air.

5

In opposition, Plaintiff argues that Air Evac should be estopped from raising an exemption defense because it previously promised Plaintiff that he was accepting a non-exempt position under the FLSA. Specifically, Plaintiff points to Air Evac's November 8, 2017, job offer letter, which described Plaintiff's position as "a non-exempt position for purposes of Federal Wage and Hour Law." Plaintiff argues that he relied on this statement in accepting the job offer from Air Evac and that Air Evac should be estopped from repudiating the statement now.

In any event, Plaintiff argues that Air Evac is not a common carrier because (1) it does not hold itself out to the public as a common carrier, instead only marketing its services to hospitals, fire departments, and other emergency service providers; (2) it does not transport patients indiscriminately, instead transporting patients based on its own determination of medical necessity and according to its own detailed policies and procedures; and (3) it does not transport patients "for hire" in exchange for a fare, instead transporting patients based on medical need regardless of their ability to pay, as required by state law. Plaintiff urges the Court to disregard the court and agency opinions cited by Defendants as non-binding and unpersuasive. Plaintiff also likens air ambulances to ground ambulances, which according to Plaintiff, are not common carriers under the common law of at least a few states for the purpose of determining the duty of care owed in a tort action. Plaintiff does not dispute that his duties as a flight paramedic bear more than a tenuous, negligible, and remote relationship to Air Evac's transportation activities.

In reply, Defendants reiterate that every court and federal agency to have considered

the question has held that air ambulance companies are common carriers by air under the RLA. Defendants also oppose Plaintiff's estoppel argument because Air Evac specifically represented that Plaintiff would only be paid an overtime premium for hours worked in excess of 84 hours in a two-week pay period, and Plaintiff was paid in accordance with that representation.

In a surreply filed with leave of the Court, Plaintiff maintains that Air Evac should be estopped from raising an exemption defense and that, in any event, the exemption does not apply because Air Evac is not a common carrier.

## **DISCUSSION**

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Metro. Prop. & Cas. Ins. Co. v. Calvin*, 802 F.3d 933, 937 (8th Cir. 2015). Under the FLSA, employees engaged in interstate commerce are to be paid "one and one-half times" their regular rates for all work performed in excess of 40 hours per workweek. 29 U.S.C. § 207(a)(1). However, § 213(b)(3) provides that the overtime provisions of the FLSA do not apply to "any employee of a carrier by air subject to the provisions of title II of the Railway Labor Act." 29 U.S.C. § 213(b)(3). Title II of the RLA, in turn, covers "every common carrier by air engaged in interstate or foreign commerce." 45 U.S.C. § 181.

To determine whether the air carrier exemption applies, courts have consistently considered (1) whether the employer is a "common carrier by air" under common law,

7

*Thibodeaux v. Exec. Jet Int'l, Inc.*, 328 F.3d 742, 749-50 (5th Cir. 2003), (2) whether the employer is engaged in interstate commerce, 45 U.S.C. § 181, and (3) whether the employee's job duties bear "more than a tenuous, negligible and remote relationship to the [employer's] transportation activities," *Northwest Airlines v. Jackson*, 185 F.2d 74, 77 (8th Cir. 1950). Only the first element is at issue here.[2]

**Common Carrier by Air**

While neither the RLA nor the FLSA defines the term "common carrier by air," as noted above, federal courts look to the common law definition for guidance. *Thibodeaux,* 328 F.3d at 749; *see also Valdivieso v. Atlas Air, Inc*., 305 F.3d 1283, 1286 (11th Cir. 2002). Under common law, the question turns on "whether the carrier has held itself out to the public or to a definable *segment* of the public as being willing to transport for hire, indiscriminately." *Thibodeaux,* 328 F.3d at 750 (emphasis in original). "What is crucial is that the common carrier defines itself through its own marketing efforts as being willing to carry any member of that segment of the public which it serves," even if that segment "represent[s] a small segment of the general population." *Id.* at 753 (citation omitted).

Applying this test, the National Mediation Board ("NMB"), the federal agency responsible for administering the RLA, *see id.* at 746, 746 n.6, as well as every federal

---

[2] There is no dispute that Air Evac is engaged in interstate commerce. And, as Plaintiff apparently concedes, Plaintiff's duties as a flight paramedic undisputedly bear more than a tenuous, negligible, and remote relationship to Air Evac's transportation activities. *See, e.g., McKinley v. Med-Trans Corp.,* No. 1:09-CV-861, 2010 WL 11530302, at *5 (E.D. Tex. Aug. 4, 2010) (holding that a flight paramedic's work performing patient care and activities related to the operation of the helicopter were sufficiently related to the air ambulance employer's transportation activities to fall within the air carrier exemption).

8

court to consider the issue, has held that air ambulance companies like Air Evac are common carriers by air under the RLA.  *See, e.g.*, *Tristate Careflight, LLC*, 41 NMB 55 (2014); *Rocky Mountain Holdings, L.L.C. d/b/a/ Eagle Airmed of Ariz.*, 26 NMB 132 (1999); *Slavens v. Scenic Aviation, Inc.*, 221 F.3d 1353 (10th Cir. 2000); *McKinley v. Med-Trans Corp.*,[3] No. 1:09-CV-861, 2010 WL 11530302, at *2–3 (E.D. Tex. Aug. 4, 2010); *Osborne v. Enchantment Aviation, Inc.*, No. CV 02-1310 MV/LCS, 2003 WL 27384862, at *2 (D.N.M. Sept. 30, 2003), *aff'd*, 112 F. App'x 673 (10th Cir. 2004).  The Department of Labor has also opined that an air ambulance company was exempt under the FLSA's air carrier exemption, expressly relying on the NMB's interpretation of the RLA in the *Rocky Mountain Holdings* opinion cited above.  U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, No. FLSA2005-10NA (Sept. 16, 2005).[4]

Likewise, federal courts applying the same common law test to determine whether air ambulances are air carriers under the Airline Deregulation Act ("ADA"), have nearly uniformly held that air ambulances—and Air Evac in particular—are common carriers under the common law.  *See, e.g.*, *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 763–64 (4th Cir. 2018) (noting that the term "common carrier" under the ADA is borrowed from the common law and incorporated into other federal statutes, including the RLA, and citing the NMB's opinion in *TriState CareFlight, LLC*, 41 NMB 55, for the proposition that air

---

[3] Med-Trans Corp. is a sister company to Air Evac.

[4] "While not controlling upon the courts by reason of their authority, the rulings, interpretations and opinions of the Secretary [of Labor] do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Perez v. Contingent Care, LLC*, 820 F.3d 288, 293 n.4 (8th Cir. 2016) (citation omitted).

ambulance companies have been uniformly treated as common carriers); *Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721, 732–33 (E.D.N.C. 2008).

Air Evac's certification by the FAA as an air carrier authorized to conduct common carriage operations, pursuant to its Part 135 Certificate, also supports the determination that Air Evac is a common law common carrier. *See e.g.*, *Thibodeaux*, 328 F.3d at 745 ("'Common carriers' . . . have traditionally been subject to the more stringent safety standards of FAR Part 135."); *Med-Trans Corp.*, 581 F. Supp. 2d at 733 ("That an entity is licensed by the government as a common carrier supports that it is a common law common carrier.") (citation omitted); *Osborne*, 2003 WL 27384862, at *2 ("While issuance of such [an FAA] certificate is not dispositive as to the applicability of the RLA, it does indicate that the services performed by Southwest Air are of a kind engaged in by common air carriers covered by the RLA.").

The federal agencies and courts noted above have explicitly considered and rejected many of the arguments raised by Plaintiff here, and the Court finds their reasoning persuasive.[5] Specifically, it is immaterial that Air Evac markets its services to hospitals

---

[5] The Court is not persuaded by the state law cases cited by Plaintiff regarding the common carrier status of ground ambulances in tort actions. Aside from the obvious distinctions regarding the type of company and type of case, some of the cases Plaintiff cites did not even address the question of common carrier status. *See, e.g., Graefenhan v. Rakestraw*, 130 S.W.2d 66, 68 (Ky. Ct. App. 1939) (rejecting the plaintiff's claim that a trial court erred in failing to give a common carrier instruction related to a ground ambulance because the appellant failed to offer such an instruction at trial). And Plaintiff admits that other state courts have held that ambulances are common carriers for the purpose of a tort action. *See, e.g.*, *Bricks v. Metro Ambulance Serv., Inc.*, 338 S.E.2d 438, 443 (Ga. Ct. App. 1985); *Home Ins. Co. v. Covington*, 501 S.W.2d 219, 221 (Ark. 1973).

and other emergency service providers rather than responding to calls directly from the public. *See Cheatham*, 910 F.3d at 764 (holding that the common carrier analysis does not turn on the fact that "Air Evac, like other air ambulance companies, relies on referrals from medical providers to dispatch its aircraft, rather than responding to calls directly from the public," just as "[a] train does not cease to be a common carrier simply because its tickets are exclusively sold through a third-party vendor"). Moreover, it appears that Air Evac also markets its services to the public via membership.

Neither is it relevant that Air Evac serves only those patients with a medical need and that it imposes certain policies and terms on its services. "One may be a common carrier though the nature of the service rendered is sufficiently specialized as to be of possible use to only a fraction of the total population. And business may be turned away either because it is not of the type normally accepted . . . ." *Am. Orient Exp. Ry. Co., LLC v. Surface Transp. Bd*., 484 F.3d 554, 557 (D.C. Cir. 2007); *see also Med-Trans Corp*., 581 F. Supp. 2d at 733 ("A common carrier need only provide services so far as his facilities enable him to perform the service.") (citation omitted). Common carriers are not prohibited from placing terms or conditions on their services. *See, e.g.*, *Valdivieso*, 305 F.3d at 1287 ("Because Atlas Air offers its services indiscriminately to anyone *willing to accept its terms* and prices, we hold that it is a common carrier." (emphasis added)).

Finally, that Air Evac may be required by state law to transport patients without questioning their ability to pay, or collecting payment up front, does not take away from its common carrier status. *See, e.g.*, *Med-Trans Corp*., 581 F. Supp. 2d at 733 ("The mere

11

fact that [an air ambulance company] does not collect tickets at the boarding gate does not mean that it is not a common carrier as required by the federal statute."). Air Evac still holds itself out to a definable segment of the public as being willing to transport "for hire," indiscriminately. As such, it is a common carrier by air.

**Estoppel**

Plaintiff does not specify whether he is relying on the doctrine of promissory estoppel or equitable estoppel; nor does he indicate whether federal or state common law should apply. But as Defendants correctly assert, Plaintiff has not established that either promissory or equitable estoppel applies here, under federal or state common law.

Any relevant theory of estoppel would require a showing of a material misrepresentation and/or reasonable and detrimental reliance thereon. *See, e.g.*, *Molina v. First Line Sols. LLC*, 566 F. Supp. 2d 770, 781 (N.D. Ill. 2007) (holding that the "core elements of [a] federal promissory estoppel" defense to an FLSA exemption, include reasonable, detrimental reliance by the proponent of estoppel); *Bell v. Foster Poultry Farms*, No. CVF-05-1539 LJO SMS, 2007 WL 896119, at *3 (E.D. Cal. Mar. 22, 2007) (holding that an element of any equitable estoppel defense to an FLSA exemption is that the party asserting the estoppel "must be ignorant of the true facts"); *Kautsch v. Premier Commc'ns*, 502 F. Supp. 2d 1007, 1015 (W.D. Mo. 2007) (holding under Missouri law that an estoppel defense to an FLSA exemption requires a statement by the person to be estopped that is inconsistent with the claim later asserted and sued upon).

Here, the offer letters Plaintiff allegedly relied on clearly disclosed Air Evac's

12

policy to pay an overtime premium only for those hours worked in excess of 84 hours in a biweekly pay period, and further pointed out that this policy was different than the overtime policy of Plaintiff's former employer, REACH, which paid an overtime premium for hours worked in excess of 40 hours in a single workweek. The mere reference to Plaintiff's position being "non-exempt . . . for purposes of Federal Wage and Hour Law" does not make the letters misleading or false, in light of the language immediately following, which stated that "non-exempt . . . *means* that you will be eligible for overtime pay for hours actually worked in excess of 84 hours in a pay period." ECF No. 35-3 at 1 (emphasis added).

Nor would it have been reasonable for Plaintiff to have relied on the "non-exempt" reference to his detriment, in light of the language quoted above. *See, e.g.*, *Reed v. Lear Corp.*, 556 F.3d 674, 679 (8th Cir. 2009) (holding that a plaintiff's alleged reliance on an employer's purportedly unclear statement in a letter about certain Family and Medical Leave Act (FMLA) policies was unreasonable as a matter of law where any uncertainty could have been cleared up by reading the FMLA information packet as a whole and by asking for clarification); *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 59 n.10 (1984) ("If, at the time when he acted, such party had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge . . . , he cannot claim to have been misled by relying upon the representation or concealment.").

In short, the Court finds that, under the undisputed facts, the FLSA air carrier exemption applies here, and Defendants are not estopped from asserting that exemption.

As such, Defendants are entitled to judgment as a matter of law.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** Defendants' motion for summary judgment is **GRANTED**.   ECF No. 19.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 26th day February, 2019.